**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

ILLUMINA, INC.,

Plaintiff,

v.

AFFYMETRIX, INC.,

Defendant.

Civil Action No. 09-cv-277-bbc

**MEMORANDUM OF DEFENDANT AFFYMETRIX, INC.**
**IN SUPPORT OF ITS MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND FACTS ..... 1

A. Affymetrix ..... 2

B. Illumina ..... 2

C. The Witnesses ..... 3

1. Mark Chee ..... 3

2. John Stuelpnagel ..... 3

3. Stephen Fodor ..... 4

4. Martin Goldberg ..... 4

5. Richard Rava ..... 5

6. Susan Siegel ..... 5

7. Robin Silva ..... 6

8. John Murphy ..... 7

D. The Accused Products ..... 7

III. ARGUMENT ..... 8

A. Legal Standards ..... 8

B. This Action Should Be Transferred to the Northern District of California ..... 8

1. The Convenience of the Parties Supports Transfer ..... 9

a. Affymetrix ..... 9

b. Illumina ..... 11

2. The Convenience of the Witnesses Supports Transfer ..... 11

3. The Interest of Justice Supports Transfer ..... 12

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arete Power, Inc. v. Beacon Power Corp.*,
No. C07-5167 WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) .......................................10

*In re Bogese*,
303 F.3d 1362 (Fed. Cir. 2002).............................................................................................6

*Carson v. Flexible Foam Prods., Inc.*, ,
No. 08-cv-095-bbc, 2008 WL 1901727 (W.D. Wis. Apr. 23, 2008)..................................9, 10

*Caterpillar, Inc. v. Deere & Co.*,
No. 96 C 5355, 1997 WL 399627 (N.D. Ill. July 11, 1997) ...................................................10

*Coffey v. Van Dorn Iron Works*,
796 F.2d 217 (7th Cir. 1986) ..................................................................................................8

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*,
512 F. Supp. 2d 1169 (W.D. Wis. 2007) ...............................................................................11

*In re Genentech, Inc.*,
__ F.3d __, 2009 WL 1425474 (Fed. Cir. May 22, 2009)................................3, 10, 11, 12, 13

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999)...............................................................................................5

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947).......................................................................................................1, 12, 13

*Howe v. Goldcorp Invs., Ltd.*,
946 F.2d 944 (1st Cir. 1991)....................................................................................................8

*Jacobs v. Sunrise Med. HHG Inc.*,
No. 06-C-286-S, 2006 WL 2038038 (W.D. Wis. July 19, 2006) ...........................................11

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007).................................................................................................................5

*Leggett & Platt, Inc. v. Lozier, Inc.*,
No. 04-C-0932-C, 2005 WL 1168360 (W.D. Wis. May 17, 2005)........................................13

*McMahon v. Carroll College*,
No. 03-C-0702-C, 2004 WL 882195 (W.D. Wis. April 14, 2004).........................................12

*Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*,
No. 05-C-104-S, 2005 WL 1181952 (W.D. Wis. May 18, 2005) ..........13

*Morris v. Safeco Ins. Co.*,
No. C07-2890 PJH, 2008 WL 5273719 (N.D. Cal. Dec. 19, 2008) ..........3

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
425 F. Supp. 2d 325 (E.D.N.Y. 2006) ..........10, 11, 12

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007)..........5

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)..........9, 10, 11

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ..........9

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..........9

**STATUTES AND RULES**

28 U.S.C. § 84(a) ..........2, 4, 5, 6

28 U.S.C. § 1400(b) ..........8

28 U.S.C. § 1404(a) ..........1, 8, 14

35 U.S.C. § 102(f)..........3

35 U.S.C. § 102(g) ..........3, 5

35 U.S.C. § 112..........3

Cal. Code Civ. P. § 1989..........3, 4, 7

Fed. R. Civ. P. 45(b)(2)..........13

Fed. R. Civ. P. 45(b)(2)(C) ..........3, 4, 7

Fed. R. Civ. P. 45(c)(3)(A)(ii) ..........3

Fed. R. Evid. 804(b)(1)..........13

Defendant Affymetrix, Inc. submits this memorandum in support of its motion to transfer venue. This action should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I. INTRODUCTION

This action involves a patent infringement dispute between Illumina and Affymetrix, two California-based companies, concerning products developed in California. The key witnesses to the alleged infringement reside in California. Nevertheless, Illumina is seeking to employ the Wisconsin courts to resolve this dispute.

No doubt that Illumina was "under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). That is no reason, however, for both parties to incur the inconvenience and expense of litigating this patent case in a forum thousands of miles from their places of business in California.

The convenience of witnesses is likewise ill-served by litigating in Wisconsin. The relevant witnesses, including two named inventors and the individuals who prosecuted the asserted patent, reside in California. None reside in Wisconsin. The accused products were developed and are located in California. None have been sold in Wisconsin. This case should be litigated in California, not Wisconsin.

## II. BACKGROUND FACTS

Illumina asserts a claim for infringement of U.S. Patent No. 7,510,841 ("the '841 patent"). (Am. Compl. ¶ 7.) The accused products are the GeneChip® HT RG-230 PM Array Plate, the GeneChip® HT Array Plate Scanner, the GeneChip® HT 3' IVT Express Kit, the

GeneChip® Array Station, and the GeneTitan® System (collectively, the "GeneChip HT products"). (*Id.* ¶ 12.)

**A. Affymetrix**

Affymetrix is a corporation with its headquarters and principal place of business in Santa Clara, California (*id.* ¶ 2; Fodor Decl.[1] ¶ 2), which is located in the Northern District of California. 28 U.S.C. § 84(a).[2] Affymetrix has additional facilities in the California cities of Emeryville, Fremont, and Santa Clara. (Fodor Decl. ¶ 2.) These facilities are also located in the Northern District of California. 28 U.S.C. § 84(a).

Affymetrix's research, development, engineering, marketing, and administrative operations have been located in Northern California since its inception. (Fodor Decl. ¶ 2.) All of Affymetrix's executive officers are based in its Santa Clara, California headquarters. (*Id.*) Affymetrix has no offices or facilities in Wisconsin. (*Id.*) Nor does Affymetrix have any parents, subsidiaries, or affiliates in Wisconsin. (*Id.*)

**B. Illumina**

Illumina is a corporation with its headquarters and principal place of business in San Diego, California. (Am. Compl. ¶ 1; Ex.[3] A.) In addition, Illumina has manufacturing and research and development facilities in Hayward, California (Ex. B at 17 & 19) – its second largest facility (*id.* at 19) – located in the Northern District of California. 28 U.S.C. § 84(a).

---

[1] "Fodor Decl." refers to the Declaration of Stephen P.A. Fodor in Support of Affymetrix's Motion to Transfer Venue, submitted concurrently herewith.

[2] 28 U.S.C. § 84(a) identifies the counties that are in the Northern District of California. A list of the cities within those counties is available at: http://ceres.ca.gov/planning/bol/2000/city_by_county.html.

[3] "Ex." refers to the corresponding exhibit to the Declaration of Roger J. Chin in Support of Affymetrix's Motion to Transfer Venue, submitted concurrently herewith.

In fact, all of Illumina's domestic facilities are located in California. (Ex. B at 19.) Illumina is not registered to do business in Wisconsin. (Ex. C.)

In prior litigation, Wisconsin has not been the forum of choice for Illumina. Instead, Illumina has employed the federal courts in California for its other litigation. (Ex. D.)

**C. The Witnesses**

For purposes of a motion to transfer, it is only necessary to identify witnesses who may be relevant to issues at trial. It is not necessary to evaluate the significance of the witnesses' testimony. *In re Genentech, Inc.*, __ F.3d __, 2009 WL 1425474, at *4 (Fed. Cir. May 22, 2009). There are several relevant witnesses in this case.

**1. Mark Chee**

Mark Chee is a named inventor of the asserted '841 patent. (Ex. F.) As a consequence, he has knowledge about a number of issues central to this lawsuit, including the inventorship of the '841 patent, its conception and reduction to practice, the adequacy of the written description, and the best mode that he contemplated of carrying out his invention. 35 U.S.C. §§ 102(f), 102(g) & 112. Dr. Chee is a non-party witness. (Ex. E.)

Dr. Chee is a resident of Del Mar, California. (Ex. J at 2.) Del Mar is within the subpoena power of the Northern District of California. Fed. R. Civ. P. 45(b)(2)(C); Cal. Code Civ. P. § 1989; *see also Morris v. Safeco Ins. Co.*, No. C07-2890 PJH, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008); Fed. R. Civ. P. 45(c)(3)(A)(ii).

**2. John Stuelpnagel**

John Stuelpnagel is a named inventor of the asserted '841 patent. (Ex. F.) Like Dr. Chee, Mr. Stuelpnagel has knowledge about the inventorship of the '841 patent, its conception and reduction to practice, the adequacy of the written description, and the best mode that he contemplated of carrying out his invention. 35 U.S.C. §§ 102(f), 102(g) & 112.

Mr. Stuelpnagel is a resident of Encinitas, California. (Ex. J at 2.) Encinitas is within the subpoena power of the Northern District of California. Fed. R. Civ. P. 45(b)(2)(C); Cal. Code Civ. P. § 1989.

**3. Stephen Fodor**

Stephen Fodor is the Founder and Executive Chairman of Affymetrix. (Fodor Decl. ¶ 1.) Dr. Fodor may testify at trial regarding the development and marketing of the GeneChip HT products. (*Id.* ¶ 3.) Dr. Fodor has testified on behalf of Affymetrix in five previous patent infringement actions. (*Id.* ¶ 4.)

As the Executive Chairman, Dr. Fodor is responsible for identifying and advancing new technologies and exploring new market opportunities for Affymetrix. (*Id.*) Currently, Affymetrix is in the midst of the process of engineering and commercializing its next generation products. (*Id.*) The time required for Dr. Fodor to travel to Wisconsin to attend and testify at trial would be a substantial disruption to Affymetrix's efforts to commercialize its next generation products during this critical period. (*Id.*)

Dr. Fodor is employed in Santa Clara, California. (*Id.*) Santa Clara is in the Northern District of California. 28 U.S.C. § 84(a).

**4. Martin Goldberg**

Martin Goldberg is the Senior Vice President of Research and Product Development at Affymetrix. (Fodor Decl. ¶ 5.) Dr. Goldberg may testify at trial regarding the design, operation, and marketing of the GeneChip HT products. (*Id.*)

As the Senior Vice President of Research and Product Development, Dr. Goldberg oversees and is responsible for the development and commercialization of Affymetrix's products, including the GeneChip HT products. (*Id.*) The time required for Dr. Goldberg to travel to Wisconsin to attend and testify at trial would be a substantial disruption to Affymetrix's

business, particularly because it would come at a time when Dr. Goldberg is needed to work on Affymetrix's efforts to commercialize its next generation products. (*Id*.)

Dr. Goldberg is employed in Santa Clara, California. (*Id.*) Santa Clara is in the Northern District of California. 28 U.S.C. § 84(a).

**5. Richard Rava**

Dr. Rava was the Senior Vice President of Research and Development at Affymetrix. While at Affymetrix, he was a principal architect leading the invention and development of Affymetrix's next generation technologies, including the GeneChip HT products. (Fodor Decl. ¶ 6.) In addition, Dr. Rava developed a system at Affymetrix for concurrently processing multiple biological chip assays in the early to mid-1990's, prior to the time Illumina first filed its application for the '841 patent. (Ex. K.) This knowledge about the state of the art and his work on similar systems prior to the '841 patent may be relevant to at least the issues of anticipation and obviousness. *See, e.g.*, 35 U.S.C. § 102(g); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417-18 (2007). Dr. Rava is no longer employed at Affymetrix. (Fodor Decl. ¶ 6.)

Dr. Rava is employed in Menlo Park, California. (*Id.*) Menlo Park is in the Northern District of California. 28 U.S.C. § 84(a).

**6. Susan Siegel**

Ms. Siegel was the President of Affymetrix. While at Affymetrix, she participated in the decisions to pursue technologies with automation capabilities, including the technologies that resulted in the GeneChip HT products. (Fodor Decl. ¶ 7.) This knowledge about the origin of the GeneChip HT products and the marketplace in which they were developed may be relevant to at least the issues of damages and willfulness. *See, e.g.*, *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999); *In re Seagate Tech., LLC*, 497 F.3d

1360, 1371 (Fed. Cir. 2007). Ms. Siegel is no longer employed at Affymetrix. (Fodor Decl. ¶ 7.)

Ms. Siegel is employed in Menlo Park, California. (*Id.*) Menlo Park is in the Northern District of California. 28 U.S.C. § 84(a).

**7. Robin Silva**

Robin Silva is the attorney responsible for prosecuting U.S. Patent Application No. 60/113,968 (Ex. G), the provisional patent application to which the asserted '841 patent claims priority. Ms. Silva is also the attorney responsible for prosecuting U.S. Patent Application No. 09/256,943 (Ex. H), the earliest non-provisional application to which the '841 patent claims priority. Ms. Silva has knowledge that is relevant to at least Affymetrix's defense of prosecution laches. (Answer ¶ 20.)

A patent is unenforceable under the doctrine of prosecution laches when there has been an unreasonable and unexplained delay in prosecution. *In re Bogese*, 303 F.3d 1362, 1367 (Fed. Cir. 2002). Ms. Silva submitted the original patent claims in two applications in 1998 and 1999. (Ex. G at 43-46; Ex. H at 44-47.) However, it was not until after a substantial delay, through at least 2004, that the claims that issued as the '841 patent were submitted. (Ex. I at 3-5.) Ms. Silva's testimony may be relevant to the issues of whether this delay of over five years is unreasonable and unexplained, and why she failed to submit the claims that issued as the '841 patent at the time she filed the original patent applications. Additionally, as a prosecuting attorney for the applications that resulted in the '841 patent, Ms. Silva has knowledge about the prosecution of the '841 patent, the relevant prior art, and the basis for representations she made to the Patent Office.

Ms. Silva is employed in San Francisco, California. (Ex. L.) San Francisco is in the Northern District of California. 28 U.S.C. § 84(a).

**8. John Murphy**

John Murphy is the agent responsible for prosecuting U.S. Patent Application No. 10/767,249, the application that issued as the '841 patent. (Ex. I at 7.) Mr. Murphy has knowledge that is relevant to at least the issue of prosecution laches.

Mr. Murphy submitted the Preliminary Amendment in U.S. Patent Application No. 10/767,249, in which the claims that issued as the '841 patent were first submitted to the Patent Office. (Ex. I at 3-5 & 7.) The claims were submitted in 2004, even though Illumina had an opportunity to submit these claims over five years earlier. Mr. Murphy represented to the Patent Office that the claims "do not introduce new matter." (*Id.* at 6.) Mr. Murphy's testimony and the credibility of any excuse he offers are relevant to the issue of whether the delay is unreasonable and unexplained. As a prosecuting agent for the applications that resulted in the '841 patent, Mr. Murphy also has knowledge about the prosecution of the '841 patent, the relevant prior art, and the basis for representations he made to the Patent Office.

Mr. Murphy is employed in San Diego, California. (Ex. M.) San Diego is within the subpoena power of the Northern District of California. Fed. R. Civ. P. 45(b)(2)(C); Cal. Code Civ. P. § 1989.

**D. The Accused Products**

Affymetrix has not sold any GeneChip HT products in Wisconsin. (Fodor Decl. ¶ 8.) Documents relating to the design, operation, manufacture, marketing, and sale of the GeneChip HT products are located at Affymetrix's facility in Santa Clara, California. (*Id.*)

The GeneTitan System (one of the GeneChip HT products) is the hardware instrument system with which other GeneChip HT products are used. (*Id.*) It is a heavy instrument that weighs approximately 300 pounds. (*Id.*) Several GeneTitan Systems are located at Affymetrix's Santa Clara, California facility. (*Id.*) Thus, these instruments are located in the

same metropolitan area as the three federal courthouses (San Francisco, San Jose, and Oakland) in the Northern District of California. By contrast, there are no GeneTitan Systems in Wisconsin. (*Id.*)

## III. ARGUMENT

### A. Legal Standards

It lies within the sound discretion of the Court to transfer this action to another judicial district where it might have been brought. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Section "1404(a) at the least reflects a congressional policy strongly favoring transfers." *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 949 (1st Cir. 1991). Transfer should be ordered where the transferee district is "clearly more convenient." *Coffey*, 796 F.2d at 220.

### B. This Action Should Be Transferred to the Northern District of California

The prerequisite for any proposed transfer is a determination that the transferee district is one in which the action "might have been brought." 28 U.S.C. § 1404(a). The Northern District of California is clearly a judicial district in which this action might have been brought. Affymetrix is based in the Northern District of California. (Am. Compl. ¶ 2.) Accordingly, the Northern District of California is a proper venue for this action. *See* 28 U.S.C. § 1400(b).

Not only could this action have been properly brought in the Northern District of California, that judicial district is also the most convenient forum for the parties and witnesses, and transfer is in the interest of justice.

**1. The Convenience of the Parties Supports Transfer**

One purpose of the transfer statute is to protect litigants from unnecessary inconvenience and expense. It is clear that Wisconsin is substantially less convenient than California for both parties to this litigation. This is not a case where transfer will merely shift inconveniences from one party to the other.

**a. Affymetrix**

The Northern District of California plainly is more convenient for Affymetrix. Affymetrix witnesses, including two of its key executives (Drs. Fodor and Goldberg), have knowledge about the GeneChip HT products and may testify at trial in this case. A trial in Wisconsin and the attendant travel required of these witnesses would be a substantial disruption to Affymetrix's business. By contrast, transfer to the Northern District of California would allow a trial to take place close to Affymetrix's place of business. (*See* Sections II.C.3-.4, *supra*.)

The Federal Circuit recently described the substantial burdens involved when a party is forced to litigate far from home:

> It goes without saying that "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (*quoting In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."). "A nearby trial would be less disruptive of defendant's operations than a trial in Wisconsin because defendant's corporate witnesses would not be away from their work as long." *Carson v. Flexible Foam Prods., Inc.*, No. 08-cv-

095-bbc, 2008 WL 1901727, at *2 (W.D. Wis. Apr. 23, 2008). This factor strongly favors transfer to California.

A trial in Wisconsin also imposes the burden of transporting documents and other evidence from California to Wisconsin. Key documents relating to the GeneChip HT products are located in California, where the products were developed. (*See* Section II.D, *supra*.) While documents may be more easily transported in this day and age (*e.g.*, *Carson*, 2008 WL 1901727, at *2), it remains the law in patent cases that "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, __ F.3d __, 2009 WL 1425474, at *6 (*quoting Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Within the last year, the Federal Circuit has twice explained that it is clearly erroneous to disregard this factor. *Genentech*, __ F.3d __, 2009 WL 1425474, at *6; *TS Tech*, 551 F.3d at 1321. Keeping this case in Wisconsin would impose upon Affymetrix the "significant and unnecessary burden" of transporting documents for trial. *Genentech*, __ F.3d __, 2009 WL 1425474, at *6.

This case also poses the unique burden involved in transporting the GeneTitan System – a heavy instrument that weighs approximately 300 pounds – from Affymetrix's facilities in California to Wisconsin, where no such instruments currently exist. A trial in Wisconsin may impose the substantial burden of transporting this sizeable instrument.[4] (*See* Section II.D, *supra*.) This, too, weighs in favor of transfer. *See Arete Power, Inc. v. Beacon Power Corp.*,

---

[4] The ability to demonstrate the actual accused product can provide "immense value" to the jury, which has the "otherwise abstract task of determining whether the accused device infringes the patent." *Caterpillar, Inc. v. Deere & Co.*, No. 96 C 5355, 1997 WL 399627, at *2 (N.D. Ill. July 11, 1997).

No. C07-5167 WDB, 2008 WL 508477, at *5 (N.D. Cal. Feb. 22, 2008) (transfer favored where "the accused products are sizeable" and only located in the transferee district).

**b. Illumina**

Illumina has no relevant contacts with Wisconsin. By contrast, Illumina has extensive contacts with California, with its second largest facility located in the Northern District of California. (*See* Section II.B, *supra.*) "Whatever plaintiffs' motivation for filing this action in Wisconsin, it is certainly not because it is more convenient." *Jacobs v. Sunrise Med. HHG Inc.*, No. 06-C-286-S, 2006 WL 2038038, at *2 (W.D. Wis. July 19, 2006). This case thus does not present a situation where transfer would shift the inconvenience of litigation from other party to the other.[5] To the contrary, transfer to California would serve the interests of both parties.

Given the absence of any connection to Wisconsin, Illumina may attempt to seek refuge in the presumption that plaintiffs are entitled to choose the forum. But where (as here) the Western District of Wisconsin is not the plaintiff's home turf, "plaintiff's choice in forum receives no special deference." *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1175 (W.D. Wis. 2007); *see also TS Tech*, 551 F.3d at 1320.

**2. The Convenience of the Witnesses Supports Transfer**

The convenience of witnesses "is probably the single most important factor in [the] transfer analysis." *Genentech*, __ F.3d __, 2009 WL 1425474, at *3 (*quoting Neil Bros.*, 425 F. Supp. 2d at 329); *see also Jacobs*, 2006 WL 2038038, at *2 ("The most compelling basis for

[5] There are no direct flights from Illumina's headquarters in San Diego, California to Madison, Wisconsin. (Ex. N.) By contrast, there are nearly 50 daily commuter (weekday) flights that provide non-stop service for the 90 minute trip from San Diego, California to the three major airports (Oakland, San Francisco, and San Jose) in the Northern District of California. (Ex. O.)

transfer is the convenience of potential non-party witnesses."). Here, the convenience of witnesses, including a number of non-party witnesses, uniformly supports transfer to California.

There are several key witnesses in California. As outlined above, these witnesses include at least two inventors of the asserted patent (Dr. Chee and Mr. Stuelpnagel), two individuals responsible for patent prosecution (Ms. Silva and Mr. Murphy), and four individuals who are familiar with the GeneChip HT products (Dr. Fodor, Dr. Goldberg, Dr. Rava, and Ms. Siegel). Five of these witnesses are located in the same metropolitan area as the federal courts in the Northern District of California, and all are located in the same state. Five are non-parties to this litigation. (*See* Section II.C, *supra*.) The location of these witnesses in or near the transferee district is "a factor to weigh substantially in favor of transfer." *Genentech*, __ F.3d __, 2009 WL 1425474, at *5.

**3. The Interest of Justice Supports Transfer**

The local interests of California plainly outweigh the interests of Wisconsin. Affymetrix is based in California and developed the GeneChip HT products in California. Affymetrix has not sold any GeneChip HT products in Wisconsin. (*See* Sections II.A and II.D, *supra*.) The connection California has with the alleged infringement thus favors transfer. *See McMahon v. Carroll College*, No. 03-C-0702-C, 2004 WL 882195, at *3 (W.D. Wis. April 14, 2004); *see also Neil Bros.*, 425 F. Supp. 2d at 331 ("The locus of operative facts in patent infringement cases usually lies where the allegedly infringing product was designed, developed, and produced."). Likewise, it would be unfair to burden the citizens of Wisconsin with jury duty for litigation between two parties foreign to Wisconsin, over a dispute regarding accused products that have never entered Wisconsin. *See Gulf Oil*, 330 U.S. at 508-09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").

Illumina presumably will point to the speed of the docket in the Western District of Wisconsin in opposing transfer. This factor, however, cannot justify denying a motion to transfer. When "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, __ F.3d __, 2009 WL 1425474, at *8; *see also Leggett & Platt, Inc. v. Lozier, Inc.*, No. 04-C-0932-C, 2005 WL 1168360, at *2 (W.D. Wis. May 17, 2005) ("this district's speed alone would be insufficient to overcome a motion to transfer if other factors showed that another venue is clearly more convenient").

A final factor underscores the need for transfer. Of the key non-party witnesses, none are subject to the subpoena power of the Western District of Wisconsin. Fed. R. Civ. P. 45(b)(2). By contrast, all may be called to testify in the Northern District of California. (*See* Section II.C, *supra*.) The ability to call these witnesses to testify live at trial strongly favors transfer:

> The existence of such witnesses is frequently an important consideration. Live testimony cannot be compelled when such witnesses are distant from the forum court. The interest of justice favors transfer to a venue where such witnesses will be available.

*Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*, No. 05-C-104-S, 2005 WL 1181952, at *3 (W.D. Wis. May 18, 2005). While it is true that the testimony of these witnesses may be introduced in Wisconsin through deposition transcripts (Fed. R. Evid. 804(b)(1)), that option is far from adequate to protect the interest of justice. "Certainly, to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition is to create a condition not satisfactory to the court, jury or most litigants." *Merrill Iron*, 2005 WL 1181952, at *3 (*quoting Gulf Oil*, 330 U.S. at 511).

## IV. CONCLUSION

For the foregoing reasons, Affymetrix respectfully requests the Court to grant its motion and transfer this action to the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

Dated: June 9, 2009

Respectfully submitted,

/s/ James R. Troupis

James R. Troupis
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
Madison, Wisconsin 53703
(608) 257-3501

Ron E. Shulman
Roger J. Chin
Jennifer Koh
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300

Attorneys for Defendant
AFFYMETRIX, INC.